Please be seated. Thank you. Please call the next case. The next case, 512-0130-WC, Graham Packaging, Inc., v. Workers' Compensation Comm'n. Counsel, you may proceed. May it please the Court. Counsel, my name is Brian Rudd. I represent the respondent, Graham Packaging. I'd like to reserve my five minutes for rebuttal. So noted. This matter comes before the Court on appeal from the Circuit Court that confirmed the Commission's reversal of Arbitrator White, who denied workers' compensation benefits. There are two main issues here today. The first one is whether the manifestation date of March 27, 2009, which was the last day the claimant worked, set by the Commission, was appropriate, and also whether the petitioner reported a work-related accident within the 45 days required by Section 6C of the Act. The standard of review here is whether the Commission's decision was against the benefit's weight of the evidence, and the employer submits that the opposite conclusion is clearly apparent from the record at hand. The seminal facts here are the employee denied any hand or elbow pain prior to going out on a non-work-related leave of absence. She took this leave of absence on November 15, 2008. She did not return to work until March 25, 2009. She sought medical treatment for carpal and cubital tunnel in both arms on March 4, 2009, and an EMG on March 10. Surgery was recommended on March 13, and it was scheduled on March 25 prior to her going into work. So when she returned to work the afternoon of March 25, 2009, she already knew she was having surgery six days later for an accident that was to occur two days into the future. Arbitrator White found that the employee failed to prove a compensable work-related accident, and that she failed to give timely notice to the employer within 45 days. Counsel, can I ask you, was there any evidence in the record that the claimant's doctors told her that her condition was work-related before she went back to work on March 27? Actually, Your Honor, no. A review of the treating records would show that she did not have a causal connection opinion in any of the treating records, which I believe is why she ended up getting an IME with Dr. Koh later on. The commission majority of Commissioner Dunn, who installed a reverse arbitrator weighting properly, stating that the last day the claimant works is an appropriate manifestation date, without weighing any of the additional factors required by the Supreme Court in Duran. Commissioner Lambour, do you consent? Can you tell us concisely what the rule is under Duran? Well, Your Honor, that's a tough one, especially based on what we talked about earlier. Can you tell us what Elvis was doing in Wonderland? It's been a hot topic here recently. We'd really like to know. Well, I can give it my best estimate, Your Honor, and I believe that Duran sets out a broad version based under Peoria County Bellwood as being the primary standard for finding a manifestation date. In cases where applying Peoria County Bellwood strictly, and in a way that would penalize a faithful worker who worked through an injury to the point that their body collapses, and would have imposed a statute of limitations on a defense, then they've made an exception under Oscar Meyer where somebody can use the last day of work, but only if they meet certain extenuating circumstances. I would submit that Duran lays out that the primary rule is the Peoria County Bellwood rule, where the date of injury and the relation to work becomes plainly apparent to a reasonable person. However, only in the strict circumstances where it was applied in a black-and-white fashion and also caused some problems under the statute of limitations, then the Oscar Meyer rule can be used. So you're saying the general rule in Duran is still that the purposes of determining the manifestation date, it's positive questions when the injury and its causal link to the employee's work becomes plainly apparent to a reasonable person. That's still the general rule? Yes, Your Honor, that's the general rule, and I believe the Supreme Court was... You need a medical diagnosis in all cases. I was just getting to that, Your Honor. The Supreme Court added some more instruction to the general rule and stated that the facts must be closely examined to ensure a fair result both for the faithful employee and the employer's insurance carrier and stress fairness and flexibility. And in doing so, I would argue that a medical diagnosis is not required, but it is one of the several factors that can be considered and should be considered by the Commission in determining whether or not it's compensable when you set the manifestation date. It boils down to there are multiple possible manifestation dates, and really what we're looking at is if the Commission's decision on that is based upon evidence in the record we have found. Well, Your Honor, there's an added... If they follow one of those, one of the potential ways of... Say yes. Your Honor, the real issue here is whether or not the Commission applied and weighed several factors in using the exception under Oscar Mayer, which it did not, and that's why its decision in this case was improper. The Commission specifically stated that the last day a petitioner works can be the manifestation date, and they're correct in certain circumstances, but here they're not. The Supreme Court in Duran said that they must weigh several factors. They failed to do so here. Oscar Mayer and Castaneda, after Oscar Mayer was decided, both specifically stated that the last day a petitioner works cannot solely be used as the only factor in always deciding the manifestation date, and that's wherein lies the problem in this case. Arbitrator White found that there was nothing significant to March 27, 2009, other than that it was the last day the petitioner worked. She went off to work. Prior to going off to work in November of 2008, the petitioner denied any hand or elbow complaints. She went off to work for a completely unrelated issue, was off to work for 109 days before going to her doctor, complaining about any problems with her hands and wrists. She received a diagnosis that day on March 4, 2009. Less than a week later, or about a week later, she had an EMG on March 10 that confirmed the diagnosis. Three days after that, surgery was recommended. So I would argue that March 4, 2009 would be the manifestation date. Under the Peoria County Bellwood rule here, as an alternative, March 10 to March 13 could also be a manifestation date decided by the court. If any of these dates are decided by the court, the petitioner failed to prove a compensable claim. She drew the line before going off on her non-work-related leave of absence, specifically denying and failing to complain about any hand or wrist complaints throughout her entire treatment leading up to this. So when she went off, there was no issue. She could not make a connection to work at that time. After she had been off work for over 100 consecutive days, she develops this carpal tunnel and cubital tunnel pain, she goes and seeks medical treatment, she gets the diagnosis, and she gets the surgical recommendation. You don't claim that she wasn't working a repetitive type job? Oh, Your Honor, no. I believe that the job does entail quite a bit of repetitive motion. But I would also argue that that is irrelevant to the decision in this case here based on the fact that the petitioner completely denied any symptoms prior to going off to work, and the fact that she was off work so long before developing these symptoms would break the causal chain between her symptoms and work. The pain that the petitioner complained about on March 4, 2009, is unlike the pain that the circumstances that were described in Justice Holdridge's dissent in Durant. In that case, the petitioner complained of off-and-on pain that was not constant or severe, and drew the ultimate conclusion that it signaled a periodic discomfort leading to doubt about the existence of a distinct injury. Here, we have a petitioner who not only complained of pain, but also felt it was bad enough to seek medical treatment. She obtained a diagnosis. That diagnosis was confirmed by the diagnostic EMG, and surgery was recommended all before she returned to work. The morning of March 25, 2009, she saw her doctor once again, and at that point she scheduled surgery. After that office appointment, she went to work. So what she's alleging here is she returned to work on March 25, knowing she was going to have surgery on March 31 for an accident that was going to occur on March 27. But it's not her claim, is it, that she developed this carpal tunnel in those two or three days? I believe that would be the only... She just claims it manifested itself then. I believe that would be the only course the petitioner could take in order to end support of the commensal claim that it would have developed over the two and a half days that she worked, or at least manifested itself over the two and a half days that she worked. Ultimately, and this is kind of an issue that I was going to touch on in the notice issue, but up until the day of trial, a petitioner on her application for adjustment of claim claimed a manifestation date of March 28. She didn't work that day. She had already gone off in preparation for her surgery. So on the day of trial that morning, it was changed, and you can see from the record that the request for hearing form was scratched out from March 28 and changed to March 27. So up until the day of trial, the respondent was under the impression the petitioner was claiming a manifestation date of March 28, 2009. Based upon the facts contained in the record, the commission's use of the Oscar Mayer standard is improper. The fact that they failed to weigh any other factors besides the last day petitioner's work is improper, and therefore the respondent would submit that since they improperly applied the exception to the rule, that they should be reversed based upon that. If the court looks at the bulk of the record, you will see that the manifestation date could be placed on either March 4th, March 10th, or March 13th, and either one would preclude a compensable accident. The second issue is with regard to the notice requirement under Section 6C of the Act. The Act specifically states that notice of the accident shall be given to the employer as soon as practicable, but not later than 45 days after the accident.  not the employer. Prejudice to the employer is only required when notice was given, but deemed to be defective or inaccurate. The employee alleged accident date ultimately is March 27, 2009. She did not report it to the employer until July 28, 2009, which was 124 days later. The Act is clear that notice must be given after the accident, not before. Since no notice was given to the employer within 45 days after the accident, the commission failed to have jurisdiction over this claim. The employee argues in her brief that she reported hand pain to, and also a trial, I'm sorry, that she reported hand pain to someone named Sandy Bergen before going off work in November of 2008. Not only is this date before the accident, but the medical records suggest otherwise. It doesn't make any sense that the petitioner would go to her doctor, not report any hand or elbow pain, on certain days deny any hand or elbow pain, and then turn around and go to work and report hand and elbow pain to her supervisor. It just doesn't add up. This is not a case of defective or inaccurate notice. This is a case of no notice. The petitioner has the burden to prove that she gave notice sometime on or after March 27, 2009, and she testified that she did not know who her supervisor was on March 27, 2009. She went off work after that date, and she did not return until July 28, and that's when she reported the accident. The record indicates that that's when the documentation was generated at the respondent discussing or documenting a work-related accident, and that should have been the date set as far as notice goes. Regardless of when the manifestation date is set, whether it's early March or late March, it's still beyond the 45 days required by Section 6C. So just to put the final point on this, she was diagnosed with carpal tunnel syndrome on March 4, correct? She was, Your Honor. But there's no evidence that the claimant's doctor told her it was work-related until she returned to work. So is the evidence that clear-cut? I believe it's a clear-cut, Your Honor. It's true that she did not get a cause of connection opinion from her treating physician in March. However, there's no record requirement that she needs, as we discussed earlier. She doesn't need this diagnosis from her doctor telling her that it's work-related. I think it's also somewhat odd that the petitioner needed to get a... What does she need to link it? Because that's the whole issue here. It's not just diagnosis, condition. When you, a reasonable person, says this is work-related or my work is aggravating my condition. I agree with you, Judge. I believe that Duran spelled it out fairly well that the primary consideration in establishing the manifestation date is when not only the injury but the relationship to work becomes plainly apparent to a reasonable person. And I would argue that a reasonable person in this petitioner's circumstances would have concluded if it truly was work-related because I don't want to be confusing here at all. The respondent is not conceding that it was ever work-related. It's quite the opposite. The petitioner develops this pain while she was off work. She had been off work for 109 days. She develops the pain, sees her doctor, which would make sense as to why she didn't give a history of it being work-related at the time. Doesn't Duran actually say in looking at 224 Illinois 2nd, 72, does it not actually say a formal diagnosis is not required? Is that language in there? I mean, I believe it's a formal diagnosis is not required. When we're getting this, you have to have a medical diagnosis. I'm confused as to that point as well, Your Honor. I don't believe you need an actual medical diagnosis. I believe that a medical diagnosis can be one of the factors considered by the commission in establishing the manifestation date, but it's not required. Well, let's go to the facts of this case, not the prior case, okay? She's cleared for work on March 25, correct? Yes, Judge, she returned to work on March 25. She's cleared for work. She's told she has this syndrome, and she's cleared for work, and she works, and there is this pain and aggravation, right? I would argue against that, Your Honor. I don't believe her condition was either accelerated, exacerbated, or aggravated during the two shifts that she worked. I see. What did the commission say, though? The commission applied Oscar Meyer without any explanation. They simply reversed the arbitrator's decision and found that they said specifically, and I believe it was something along the lines of, it's well settled in Illinois that the last day a petitioner works can be the manifestation date. And that's the length of their description as to why they reversed the arbitrator. And, again, that's one of the reasons, probably the primary reason why the respondent is here today because that's not enough. Under Duran, the commission is required to weigh several factors in determining the manifestation date, and under Oscar Meyer and under Castaneda, the commission is not permitted to simply just take the last day of work and use that as a manifestation date without considering anything else. Based upon the facts of this case, there is no consideration for statute of limitations, which is in further support that Oscar Meyer does not apply here. The primary consideration would be under Peoria County Bellwood, and under Peoria County Bellwood, the petitioner failed to prove a compensable claim. That manifestation date would have been set in either March 4th, March 10th, or March 13th, but not after she returned to work, and definitely not on March 27th. There's really nothing significant about March 27th. She never reported any issues. She never said that she had any increased experiences of pain. The medical records are silent as to anything specific that could have happened on March 25th, 26th, or 27th while she was at work. In conclusion, the employee was out of work for 131 days before coming back for only 2.5 shifts from March 25th to March 27th. She was off work when she was diagnosed with carpal incubator tunnel. She could not have worked faithfully through her pain like the employee in Oscar Meyer. You'll have time on reply. I see the lights on. Thank you. Thank you. Counsel, you may respond. Good morning, Justices and Counsel. Patrick Talen, Counsel for Petitioner. Ms. Tate. I think when we look at this case in totality, it is basically manifest way to the evidence. We have to decide whether the commission was right or wrong. We've all read a number of awards from the commission, and I think in this one particularly, they delved into and in detail addressed what the arbitrator wrote, applied their perspective and the law as they see it, based on the evidence in the record, and found that there was accident causation, etc. There's no dispute that the job is repetitive. The commission in its award talks about the repetitive nature of it. Respondents' own videotape shows that it's a repetitive situation. So we have this repetitive job over 17 years, you hear a bellwork type thing, you penalize the worker who works and then is diagnosed with a condition. There's no dispute that it's repetitive in nature. I don't think the employer is disputing that. What about this argument that she was diagnosed with carpal tunnel on March 4, 2009? That is when one of the doctors that was treating her diagnosed that she had this condition. She had complaints. As you are treating with a doctor, they talk to you, you complain a little bit, they will find a lot of things wrong with you when you go in. Doesn't that enter into this at all? Doesn't that enter into the decision-making process that she was diagnosed on March 4, 2009? Well, it is one of the factors, as in the doctors looking at causation. Manifestation is a very multifaceted situation. It can be when the body ultimately breaks down. It can be when the person goes off and has treatment. It can be when they make the logical connection between the work and their diagnostic situation. Let's take that latter link. When would you say that date would be, the connection? The connection in her mind? Correct. So she hadn't been told the connection prior to returning to work, March 25th, I assume? No. Okay, so when would that connection have been made? That was made sometime after that point in time. There is no specific fact and evidence as to when the light went on in her mind. She came to us in the summer of that year, mid-2009, asking for our assistance when the claim was denied. How long did she work at this job? 17 years. She's done the job for 17 years. The doctor tells her you've got carpal tunnel syndrome, and the light goes on when? It goes on subsequently. I believe it's July. The employer had a conversation with her. She was off work from March through July. Again, this is one of those not the clearest situations as far as manifestation is concerned. But in the interest of justice, the courts have modified, and the whole theory of it. It's a flexible. We have discerned this morning, if nothing else, that there's no hard and fast rule or some flexibility, I think, might be a fair statement. It's nothing but shades of gray,  There's no black and white in any of the cases. And they continue to evolve over time. So is your position, then, that there is some evidence in the record to support the commission here? Yes, the commission cites it. They have the option to select manifestation date. They could have selected the date of EMG. You see a lot of cases where EMG is manifestation, or there's a comment in the doctor records. When you don't have that, how do you penalize the injured worker when they don't quite connect it up? A lady in a rural community, not exactly. Duran would say you don't penalize the worker, right? You don't. So there has to be flexibility and latitude in what the arbitrator, or the commission, I should say, what they decide, and that is what they did. They wrote, in our opinion, a very well-reasoned decision. They gave the basis, and it was based on the evidence contained in the record. And we believe that it was a well-reasoned decision. It was affirmed by the circuit court. So we would ask that you affirm it as well. Thank you, counsel. Counsel, you may reply. Thank you, Your Honor. Just briefly, it's the respondent's opinion that the commission improperly applied the law, and my point of the state of the law is that the commission saw it, at least written in the commission's decision, as incorrect. If you look at Duran at 71, it specifically states, indeed the rule in Peoria County is broad enough for us to accommodate unique scenarios presented in different cases, and the commission should weigh many factors in deciding when a repetitive trauma injury manifests itself. If you look at the claim letters contained in the commission's decision, they did not consider any other factor besides the last day the petitioner worked on March 27, 2009, and that is inappropriate under Duran. Based upon those facts, the respondent argues that the petitioner failed to prove a defensible claim. As my opponent argued, if the light went on in her head sometime in the summer of 2009, and we mentioned July, and the manifestation date is even applied as late as March 27, she still made the notice to the employer beyond the 45 days required by Section 6C. So for that reason, the petitioner also failed to prove a defensible claim, at least legally under the Act. How does it fit that you have an IME physician who says there's no connection, but the connection is supposed to be plainly apparent on her? Well, Your Honor, I would argue that my IME doctor considered several other medical factors which are plain and apparent from the medical records. I'm not conceding that there is a causal connection. Do you understand that pattern? I do understand as far as the requirement that it becomes plainly apparent to a reasonable person. However, on her end, at least, I can recite some of the petitioner's arguments where she stated that she had worked there for over a decade doing a job that we would concede is repetitive in nature. So as far as that goes, I would believe that the connection inside the petitioner's brain, to the extent that I can speak to it, should have been made by an employee if she really believed that this was the cause of her injury. She'd been working there for that long. Thank you, Counsel Polk, for your arguments. This matter will be taken into advisement. The written disposition shall issue.